NOTICE

*The text of this opinion can be corrected before the opinion is published in the*
*Pacific Reporter. Readers are encouraged to bring typographical or other formal*
*errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

SHUBHRANJAN GHOSH,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12374
Trial Court No. 3AN-14-3371 CR

O P I N I O N

No. 2559 — June 16, 2017

Appeal from the Superior Court, Third Judicial District, Anchorage, Philip R. Volland, Judge.

Appearances: Ronald A. Offret and J. E. Wiederholt, Aglietti, Offret & Woofter, Anchorage, for the Appellant. Jonas M. Walker, Assistant Attorney General, Office of Special Prosecutions, Anchorage, and Craig W. Richards, Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge. [*]

Judge MANNHEIMER.

Following an investigation by the State of Alaska's Medicaid Fraud Control Unit, psychiatrist Shubhranjan Ghosh was indicted for 18 crimes: one count of medical

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

assistance fraud, one count of scheme to defraud, one count of tampering with physical evidence, and 15 counts of controlled substance misconduct (writing drug prescriptions that were not medically justified).

Several months later, the State and Ghosh reached a plea agreement to resolve the case. Under this agreement, Ghosh would plead guilty to two charges (the medical assistance fraud count [1] and the evidence tampering count [2]), and the State would dismiss the other 16 charges.

Because Ghosh's act of fraud involved unlawful gain of $25,000 or more, his crime was a class B felony. [3] As a first felony offender, Ghosh faced a presumptive sentencing range of 1 to 3 years' imprisonment for this offense. [4]

As part of his plea bargain, Ghosh stipulated that his criminal conduct was aggravated under AS 12.55.155(c)(16) — *i.e.*, that his conduct was designed to obtain substantial pecuniary gain, and that the risk of prosecution and punishment for this conduct was slight. The existence of this aggravator gave the superior court the authority to sentence Ghosh to any term of imprisonment up to the 10-year maximum sentence for class B felonies. [5] And because Ghosh did not plead any mitigating factors, his effective mandatory minimum sentence was the low end of the applicable presumptive range — *i.e.*, 1 year's imprisonment. Thus, Ghosh ostensibly faced a sentencing range of 1 to 10 years' imprisonment.

---

[1]  AS 47.05.210(a)(2).

[2]  AS 11.56.610(a)(2).

[3]  AS 47.05.210(b)(1).

[4]  AS 12.55.125(d)(1) (pre-2016 version).

[5]  AS 12.55.125(d); AS 12.55.155(a)(1).

One of the clauses of Ghosh's plea agreement was designed to restrict the superior court's sentencing authority within this 9-year range. The present appeal arises because the prosecutor and the defense attorney apparently had differing understandings of this clause of the plea agreement. Here is the pertinent clause of the agreement, with the contested wording in italics:

> Sentencing will be open to the court with the following exceptions: *jail range* will be from the 1 year statutorily mandated minimum to a maximum of 3.5 years (time for both counts to run concurrent)[.]

The prosecuting attorney stated that he understood the term "jail range" to mean Ghosh's *active* term of imprisonment — *i.e.*, Ghosh's time to serve, apart from any suspended term of imprisonment. Thus, under the prosecutor's understanding of the agreement, Ghosh could receive as much as 3½ years to serve, plus additional suspended time — up to a total of 10 years.

The defense attorney, on the other hand, told the court that he understood the term "jail range" to mean Ghosh's *total* term of imprisonment — the combination of Ghosh's active term of imprisonment and any suspended term of imprisonment. According to the defense attorney, he thought that Ghosh's time to serve and his suspended jail time, taken together, could total no more than 3½ years.

Because of a series of procedural irregularities, this discrepancy in the two attorneys' interpretations of the plea agreement was not revealed until *after* the superior court sentenced Ghosh to a term of 7 years with 3½ years suspended — a sentence that would be proper under the prosecutor's interpretation of the agreement, but improper under the defense attorney's interpretation.

The question is what to do about this problem now.

*A more detailed description of the proceedings in the superior court*

On December 1, 2014, the parties assembled in court to sign the written plea agreement, and to have Ghosh formally offer his guilty pleas to the two counts specified in the agreement (medical assistance fraud and evidence tampering). Ghosh's case was assigned to Superior Court Judge Philip R. Volland, but Judge Volland was apparently unavailable to handle this change-of-plea hearing, so Judge Michael R. Spaan took Ghosh's pleas.

At this December 1st hearing, Judge Spaan accepted Ghosh's guilty pleas — that is, he ostensibly found that Ghosh's pleas were knowing and voluntary — but Judge Spaan failed to meaningfully question Ghosh about his understanding of the plea agreement before he accepted Ghosh's pleas.

The judge merely asked if Ghosh understood that he was entitled to persist in his pleas of "not guilty", and if Ghosh understood that he was giving up his right to a jury trial and "the [other] constitutional rights that [he had]." The judge never asked Ghosh if he understood what sentencing range his plea agreement called for. Nor did the judge ask the attorneys to clarify what the plea agreement meant when it stated that Ghosh's "jail range" would be from "1 year ... to a maximum of 3.5 years". [6]

In addition, Judge Spaan did not make any decision as to whether the terms of the plea agreement were acceptable to the court. Under Alaska Criminal Rule 11(e), a court is required to affirmatively accept or reject a plea agreement, either at the time

---

[6]   *See United States v. Kerdachi*, 756 F.2d 349, 352 (5th Cir. 1985) ("When it became apparent that a plea agreement was involved in [the defendant's] entry of a guilty plea, the trial court was obliged to become informed as to all of the material terms of the agreement, after which the court was required to determine on the record that [the defendant] had an adequate understanding of those terms. A guilty plea is not voluntary if it is based on a misapprehension of a significant term of a plea agreement.").

the terms of the agreement are disclosed to the court or later, after the court has read the pre-sentence report — but in any event, before the court sentences the defendant.

In Ghosh's case, Judge Spaan ordered a full pre-sentence report, and he expressly deferred any decision on whether to accept the plea agreement — apparently believing that it was better to have Judge Volland make this decision.

Ghosh's sentencing in front of Judge Volland did not take place until almost eight months later, on July 29, 2015.

In the State's pre-sentencing memorandum, the prosecutor asked the court to sentence Ghosh to 10 years' imprisonment with 6½ years suspended — in other words, 3½ years to serve plus a substantial amount of suspended jail time. Ghosh's attorney filed a responsive sentencing memorandum one week later, but the defense attorney never objected to the prosecutor's proposed sentence as being outside the sentencing range permitted by the plea agreement.

Similarly, during the sentencing hearing itself, the prosecutor explicitly asked Judge Volland to impose a sentence of 3½ years to serve plus suspended time. Ghosh's attorney did not object.

After the prosecutor finished his sentencing remarks, the defense attorney delivered his own sentencing argument — an extensive presentation totaling almost 50 minutes. But during his sentencing argument, the defense attorney never objected to the prosecutor's proposed sentence as being outside the plea agreement.

After the attorneys had delivered their sentencing arguments, Judge Volland engaged in a lengthy analysis of the *Chaney* sentencing criteria,[7] and he also examined a number of this Court's prior cases dealing with sentencing for white-collar crimes. The

---

[7]  That is, the sentencing criteria now codified in AS 12.55.005, but originally announced in *State v. Chaney*, 477 P.2d 441 (Alaska 1970).

judge ultimately sentenced Ghosh to 7 years' imprisonment with 3½ years suspended —
in other words, 3½ years to serve plus another 3½ years suspended.

Again, Ghosh's attorney did not object to this sentence as being outside the sentencing range specified in the plea agreement.

However, a few minutes later, while the parties were still in court, Ghosh's attorney asked Judge Volland if he had decided to accept the terms of the plea agreement between Ghosh and the State. Judge Volland was surprised by the defense attorney's question:

> *Defense Attorney*: Your Honor, I need to ask: Did you accept the terms of ... the Rule 11 plea agreement? It says, "This plea agreement, if accept[ed] by the Court, ... " I never did hear you say [whether] you accepted it or not.

> *The Court*: I assumed ... Judge Spaan [accepted the terms of the plea agreement] when he accepted Dr. Ghosh's plea on December 1st. Did he not?

> *Defense Attorney*: I think [it is] often typical [to] leave that for the sentencing judge to make that decision. So I just need to know if you accept it.

> *The Court*: Okay.

> *Defense Attorney*: Do you accept it?

> *The Court*: Yes. I did not realize that [this had not already been done]. I would have addressed that [issue] first today, before proceeding with [sentencing]. I wouldn't have proceeded ... without accepting it. I thought it had been done, I thought that's why we were proceeding, so —

> *Defense Attorney*: I — I understand.

*The Court*: I do accept [the plea agreement].

As can be seen from this exchange, Ghosh's attorney presented this issue as if it merely involved a technical requirement that had to be honored — a procedural act that the court had forgotten to perform.

But a few minutes after this colloquy — seemingly out of the blue — the defense attorney challenged Ghosh's sentence as being outside the range of sentences permitted by the plea agreement:

> *Defense Attorney*: The last thing, Your Honor, is paragraph 4 [of the plea agreement, which states]: "Sentencing will be open to the court with the following exceptions: Jail range will be from [the] 1 year mandatory minimum to [a] maximum [of] 3.5 years." When you sentenced Dr. Ghosh to 7 years to serve with 3½ suspended, I believe that goes outside of our agreement, the plea agreement. And so, therefore, I would request that you redefine that particular part of your sentence and just sentence him to [a] flat 3½ years to serve — no suspended time, because that's ... additional time over and above the agreed-upon 3½ years.

> *The Court*: Well, then we have an issue here — because I understood "jail range" to mean ... active jail time.

> *Defense Attorney*: Well, that puts him at risk because if — let's say he served three years and three months [*sic*], [and he] is then released and violates his probation. [If his probation is revoked], the other 3½ suspended years could be reimposed [*sic*]. And I don't think that that's what this agreement means.

*The Court*: That is certainly what I intended by my sentence.

*Defense Attorney*: Right.

*The Court*: ... I read this to mean that the active jail time could be between 1 year and 3½ years. That's how I read that.

*Defense Attorney*: I don't disagree with your reading of that. But when you have [another] 3½ years of suspended time hanging over your head, that's additional. So I think that that suspended time goes outside the agreement that we have. I would request that you correct that part of your sentence, or that [this] matter remain open for further consideration.

*The Court*: If that was your understanding of the plea agreement, why did you not raise that issue before right now, ... when the State was proposing a sentence of 10 years with 3½ to serve and 6½ suspended?

*Defense Attorney*: I didn't see that as a reality.

*The Court*: Well, ... it [was] a proposal in direct contravention of what you understood the agreement to be.

*Defense Attorney*: My alternative would be to withdraw [from] the plea agreement if I really thought that they were going for 10 years as a sentence.

*The Court*: Well, ... that's what they *were* really going for — 10 years.

*Defense Attorney*: Well, then they should be scolded for going outside of the plea agreement, and [you] should

allow us to withdraw [from] the plea agreement. You can't promise to bring us in on a plea agreement and then go outside of that plea agreement. That's a violation of the plea agreement, and we have a right to withdraw the plea.

. . .

I think it's a simple correction [of the sentence]. You just ... sentence him to 3½ years time to serve. Pretty easy to — for me.

*The Court*: Well, I'm sure you may see it as that. Let me hear from the State — and I should ask to hear from Mr. Peterson, who's sitting back there, because he apparently drafted this.

Mr. Peterson (from the Department of Law) informed Judge Volland that, when he drafted the plea agreement, he intended the phrase "jail range" to refer to Ghosh's active term of imprisonment (*i.e.*, Ghosh's time to serve), as distinct from any additional suspended term of imprisonment that Ghosh might receive. Judge Volland then declared that he had interpreted the plea agreement in the same way:

*The Court*: Well, Mr. Offret, ... I'm not sure procedurally what the correct thing for you to do is. Whether at this point you [can] still move to withdraw [your client's plea]. I've clearly sentenced [your client]. I don't know what procedurally you need to do. ... But I can tell you that I read that [clause of the plea agreement] to mean that [Ghosh's] active jail time was 1 to 3½ years. Otherwise, I would not have considered sentencing him to 3½ years' active jail time with [an additional] 3½ years suspended — which is my intent — for a total sentence of 7 years. And, as you can tell from the cases I [discussed in my sentencing remarks], ... I concluded that, given the amount of [the] theft, active jail time between 3 and 5 years fits squarely within the decisional

– 9 –

law, and suspended time [of] up to 5 years fits squarely in [that] case law.

In response to Judge Volland's remarks, Ghosh's attorney announced that he intended either to ask the court to "correct" (*i.e.*, reduce) Ghosh's sentence, or ask the court to let Ghosh withdraw his guilty pleas.

One week later, the defense attorney filed a "Motion to Correct Sentence". This pleading was written in a disingenuous fashion, as if there were no dispute about the terms of the plea agreement, and as if Judge Volland had utterly ignored the sentencing provisions of the agreement.

The defense attorney quoted the provision of the agreement that spoke of Ghosh's "jail range" as being 1 to 3½ years. Then the defense attorney declared that the parties had "specifically agreed" that Ghosh's *total* sentence could not exceed 3½ years.

This assertion completely ignored (1) the fact that the State's sentencing memorandum expressly sought a sentence of 10 years' imprisonment with 6½ years suspended, (2) the fact that the prosecutor stated in open court that the 3½-year "jail range" referred only to Ghosh's time to serve, and (3) the fact that Judge Volland stated that he, too, interpreted the agreement as limiting only Ghosh's time to serve.

The defense attorney declared that, when Judge Volland sentenced Ghosh to 7 years with 3½ years suspended, the judge had either overlooked or consciously ignored the express terms of the plea agreement. Then, ignoring the chronology of events, the defense attorney accused Judge Volland of accepting a plea agreement that called for a particular maximum sentence, "only to double the jail time when [the] sentence [was] later pronounced."

(As we have explained, Ghosh's sentence was pronounced *before* the defense attorney called on Judge Volland to formally declare whether he accepted the plea agreement.)

The defense attorney argued that these events had undermined the voluntariness of Ghosh's guilty pleas:

> A defendant who pleads guilty or no contest pursuant to a plea agreement conditions that plea on the assumption that the terms of the agreement will be fulfilled; the voluntariness and intelligence of the plea depend upon fulfillment of the agreement. When the court first accepts the plea agreement, but then imposes a sentence beyond the agreement's terms, its action necessarily vitiates the voluntariness and intelligence of the underlying plea, effectively rendering the plea a nullity.

However, in the concluding portion of his pleading, the defense attorney shifted course. Instead of demanding that Ghosh be allowed to withdraw his guilty pleas on the ground that they were involuntary, the defense attorney declared that Judge Volland was "bound to impose a sentence confined to the [plea] agreement's express terms", and that the judge was now required to "correct the sentence to reflect the Rule 11 agreement" — in other words, alter the sentence to reflect the *defense attorney's* interpretation of the plea agreement.

Judge Volland denied the defense attorney's motion, primarily on the ground that Ghosh had "waived any claim based on his current interpretation of the [plea] agreement". Based on the defense attorney's "silence in the weeks before sentencing, and during sentencing [itself]" — that is, the defense attorney's failure to object or take any other action until *after* Ghosh's sentence was pronounced — Judge Volland concluded that the attorney had waived any claim that Ghosh's sentence did not conform to the terms of the plea agreement.

*Why we vacate Judge Volland's ruling that Ghosh has waived any objection to his sentence*

As we have explained, Judge Volland denied the defense attorney's motion to "correct" Ghosh's sentence — *i.e.*, reduce it — because the judge concluded that the defense attorney had waived the right to seek this remedy.

Judge Volland was certainly justified in his disapproval of the defense attorney's conduct in this case. The defense attorney asserted that he interpreted the plea agreement as placing a 3½-year limit on Ghosh's total sentence (*i.e.*, Ghosh's combination of time to serve and suspended imprisonment). But as Judge Volland noted, the defense attorney took no action, and made no objection, when the prosecutor (both in his pre-sentence memorandum and at the sentencing hearing itself) asked the judge to impose a sentence of 3½ years to serve coupled with 6½ years of suspended imprisonment.

Likewise, the defense attorney made no immediate objection when Judge Volland actually imposed a sentence — 3½ years to serve plus another 3½ years suspended — that exceeded the defense attorney's purported understanding of the plea agreement.

Instead, the defense attorney waited for several minutes. Then, without disclosing that he thought there was any problem with the sentence, the defense attorney asked Judge Volland if he was going to accept the plea agreement. After expressing surprise that this had not already been done, Judge Volland said that he would accept the plea agreement. Again, the defense attorney made no immediate objection. But then, a few minutes later, the defense attorney attacked Ghosh's sentence as being inconsistent with the terms of the plea agreement.

On this record, Judge Volland might justifiably conclude that the defense attorney's handling of this matter was either incompetent or the product of a tactical gamble. On the one hand, the defense attorney might have acted incompetently by allowing the entire sentencing process to take place without knowing whether Judge Volland had accepted the plea agreement, and by failing to respond in any pertinent way to the State's sentencing memorandum — in which the prosecutor expressly asked for a sentence of 3½ years to serve plus 6½ years of suspended jail time. On the other hand, the defense attorney may have engaged in a calculated maneuver, waiting to see what sentence Judge Volland would impose, and then objecting when that sentence exceeded a total of 3½ years.

Nevertheless, we can not uphold Judge Volland's ruling that the defense attorney waived any right to assert that Ghosh's sentence exceeded the terms of the plea agreement. Regardless of whether Judge Volland might properly censure the defense attorney's conduct in this matter, the ultimate question is whether Ghosh can be held to his guilty pleas.

Right now, the record contains no evidence of *Ghosh's* understanding of the plea agreement. We have only the defense attorney's assertion that *he* (*i.e.*, the attorney) interpreted the plea agreement as limiting Ghosh's total sentence to 3½ years.

As of yet, there is no judicial finding (one way or the other) as to whether the defense attorney was accurately describing *his own* understanding of the plea agreement during his colloquy with Judge Volland. But more importantly, there is no judicial finding regarding *Ghosh's* understanding of the plea agreement — and that is the crucial issue.

If Ghosh offered his guilty pleas thinking that his total sentence could not exceed 3½ years, then he has not received the benefit of the bargain as he understood it, and he is entitled to raise this issue despite his attorney's handling of this matter. We say

"if" because there is currently no testimony, and no judicial finding, regarding Ghosh's personal understanding of the plea agreement. (As we noted earlier in this opinion, Judge Spaan failed to ascertain Ghosh's understanding of the plea agreement when he accepted Ghosh's guilty pleas.)

*Why we reject Ghosh's claim that he is entitled to receive a sentence that conforms to his defense attorney's understanding of the plea agreement*

Because we have rejected Judge Volland's ruling that Ghosh's attorney waived any potential relief that his client might claim, we must now turn to Ghosh's argument on appeal regarding the type of relief to which he is entitled. In his brief to this Court, Ghosh's attorney argues:

1. that Ghosh's plea agreement is a contract between Ghosh and the State;

2. that if the terms of the plea agreement are ambiguous, Ghosh is entitled to have the agreement interpreted in the light most favorable to himself; and

3. that Ghosh is entitled to demand specific performance of the plea agreement (construed in the light most favorable to himself).

In other words, Ghosh's attorney claims that Judge Volland is required to reduce Ghosh's sentence to a *total* term of imprisonment of between 1 and 3½ years.

As we have already explained, there is currently no evidence regarding Ghosh's personal understanding of the plea agreement, much less a judicial finding on this issue. Nevertheless, in the interest of advancing the resolution of this case, we will address the question of what should happen if Ghosh establishes that he personally interpreted the plea agreement as setting a 3½-year limit on his total sentence (as opposed to setting a 3½-year limit on his time to serve).

Generally, when a party claims that a provision of a contract is ambiguous and reasonably susceptible of differing interpretations, a court will resolve the issue by taking testimony concerning the parties' understanding of the provision at the time the contract was made, by examining the case law interpreting similar language, and by receiving extrinsic evidence concerning the interpretation of the disputed language within the relevant community of contracting parties. [8] If the meaning of the provision remains ambiguous after the court engages in this analysis — that is, if the parties' differing interpretations are still both objectively reasonable, given all the available evidence regarding the circumstances and purposes of the agreement — then, normally, the court will resolve the case by deciding which party's interpretation is the more reasonable under the circumstances. [9]

But in our past cases dealing with plea bargains, this Court has analogized them to contracts where one of the contracting parties — the government — has disproportionate bargaining power. Thus, when the government has drafted a plea agreement that contains an ambiguous clause, and the parties have differing interpretations of that ambiguous clause, and when each party's interpretation is objectively reasonable, the ambiguous clause will be construed against the government. [10]

Here, Ghosh argues that his plea agreement with the State is objectively ambiguous because the agreement uses the term "jail range" without expressly defining it. Ghosh contends that, even if the prosecutor who drafted this agreement intended "jail

---

[8]   *Anthony v. State*, 329 P.3d 1027, 1032 (Alaska App. 2014).

[9]   *Ibid.*

[10]   *Ibid.*

range" to mean Ghosh's active term of imprisonment, Ghosh and his attorney reasonably interpreted "jail range" to mean Ghosh's total sentence.

Because, according to Ghosh, the plea agreement is reasonably susceptible of two interpretations, Ghosh argues that the ambiguity in the plea agreement must be construed in his favor, and that the superior court must sentence him to a term of imprisonment whose total — active and suspended time — does not exceed 3½ years.

But even though plea agreements are, in many ways, analogous to contracts between the government and the defendant, plea agreements are crucially different from normal contracts because the court is a necessary third party to any proposed plea agreement. As explained in Wright and Leipold's treatise, *Federal Practice and Procedure*:

> The contract analogy ... can be misleading in that it suggests that there are only two relevant parties, while in fact the trial court plays a critical role in the process. Thus, ordinarily neither party is justified in relying on the bargain until the trial court approves it.

Charles Alan Wright and Andrew D. Leipold, *Federal Practice and Procedure: Criminal* (4th ed. 2008), § 180, Vol. 1A, pp. 317-18.

Under Alaska Criminal Rule 11(e), the parties to a criminal case can not force a court to accept their proposed plea bargain. Rather, the court is required to independently evaluate the proposed bargain and then either accept it or reject it.

Rule 11(e) also codifies the principle that the court must affirmatively approve a plea agreement before the agreement takes effect and the parties are bound. This is why Rule 11(e)(3) declares that when the court rejects a proposed plea agreement as being unduly favorable to one of the parties, that party — either the government or the defendant — must be given the opportunity to withdraw from the agreement.

In his argument to this Court, Ghosh repeatedly emphasizes the fact that, after Judge Volland imposed Ghosh's sentence, Ghosh's defense attorney asked the judge if he accepted the plea agreement, and Judge Volland declared that he *did* accept the plea agreement. Ghosh essentially takes the position that Judge Volland uttered magic words when the judge declared that he accepted the plea agreement — words that retroactively bound Judge Volland to *Ghosh's* interpretation of the plea agreement, thus invalidating the sentence that Judge Volland had just pronounced, and obligating the judge to impose a new, lesser sentence.

But it is clear from the record that, when Judge Volland declared that he accepted the plea agreement, the judge said so because he thought that the plea agreement authorized the sentence he had just imposed: 7 years' imprisonment with 3½ years suspended.

As shown by Judge Volland's contemporaneous statements on the record, the judge believed that the phrase "jail range" referred to the time-to-serve component of Ghosh's sentence — and that a sentence of 7 years with 3½ suspended was within the boundaries of the plea agreement. Thus, Judge Volland's understanding of the plea agreement was materially different from the interpretation that Ghosh now proposes.

As we explained earlier in this opinion, if the dispute in interpreting the plea agreement were purely between Ghosh and the State, and if both parties had objectively reasonable (but differing) interpretations of the agreement, then Ghosh would be able to invoke the presumption that the agreement should be interpreted against the State. But this presumption does not apply to *Judge Volland's* interpretation of the agreement.

Judge Volland was not — in fact, he could not be — a party to the plea negotiations. [11] His role was to independently assess the proposed agreement and decide

---

[11] *See State v. Buckalew*, 561 P.2d 289, 292 (Alaska 1977), holding that Alaska trial judges are "totally barred from engaging in either charge or sentencing bargaining".

whether it was unduly favorable to one side or the other. Although Judge Volland ostensibly accepted the plea agreement, the record shows that he did so only because his understanding of the agreement differed materially from Ghosh's purported understanding of the agreement — and only after the judge concluded that the proper sentence in Ghosh's case was 3½ years' active imprisonment augmented by another 3½ years of suspended imprisonment.

Several federal circuits recognize the authority of a trial court to rescind its earlier acceptance of a plea agreement if, before the parties act in reliance on the court's adoption of the agreement, the court changes its mind about whether the plea agreement is acceptable. [12] We do not have that kind of situation here. Rather, we have a situation where a judge, acting in reasonable reliance on a particular interpretation of a plea agreement, declared that he accepted the agreement — only to have the defense attorney belatedly claim that the agreement did not mean what the judge reasonably thought.

In this situation, assuming that Ghosh is able to establish that he offered his guilty pleas under an objectively reasonable but differing interpretation of the plea agreement, Judge Volland's acceptance of the agreement must be rescinded.

---

[12] *See United States v. Mukai*, 26 F.3d 953, 956 (9th Cir. 1994) ("[I]f the court later finds the disposition in the plea agreement objectionable[,] it ... should withdraw its acceptance of the plea agreement and permit the parties to renegotiate a more appropriate sentence or opt for trial.").

*Accord*: *United States v. Moure-Ortiz*, 184 F.3d 1, 3 (1st Cir. 1999); *United States v. Bernard*, 373 F.3d 339, 345 (3rd Cir. 2004); *United States v. Cervantes-Valencia*, 322 F.3d 1060, 1062 (9th Cir. 2003); *United States v. Schuman*, 127 F.3d 815, 817-18 (9th Cir. 1997).

*But cf. United States v. Blackwell*, 694 F.2d 1325, 1338-39 (D.C. Cir. 1982) (holding that judges have no authority to withdraw their acceptance of a plea bargain after the defendant has detrimentally relied on the judge's earlier acceptance of the bargain).

In that event, the parties must either (1) re-negotiate the agreement, or (2) attempt to convince the superior court that the agreement as interpreted by Ghosh is still acceptable, or (3) abandon their efforts to settle the case, and go to trial.

Of course, if Ghosh fails to establish that he offered his pleas under the objectively reasonable belief that the plea agreement limited his *total* sentence to 3½ years, then Ghosh is not entitled to any relief, and Judge Volland's sentencing decision will stand.

*Conclusion*

At this point, we can not tell what the proper resolution of Ghosh's case should ultimately be. However, we vacate Judge Volland's ruling that Ghosh has waived any right to relief, and we also reject Ghosh's argument that he is entitled to specific performance of the plea agreement under the interpretation proposed by his attorney.

This case is REMANDED to the superior court for further proceedings consistent with this opinion.